S10G0211. THE STATE v. PORTER.
(705 SE2d 636)

NAHMIAS, Justice.

Finding a violation of Stanley Porter's constitutional right to a speedy trial, the trial court granted Porter's motion to dismiss his indictment. The Court of Appeals affirmed, see *State v. Porter,* 300 Ga. App. 128 (684 SE2d 299) (2009), and we granted certiorari to consider its ruling. For the reasons that follow, we conclude that, because the trial court clearly erred in key factual findings and failed to enter a proper order balancing the relevant legal factors, the Court

of Appeals should have vacated the trial court's judgment and remanded for the trial court to exercise its discretion again based on the correct facts and law. Accordingly, we reverse and remand the case to the Court of Appeals for proceedings consistent with this opinion.

1. Porter was arrested on November 12, 2000, for molesting one of his minor children. The State first indicted Porter on December 29, 2000, and then re-indicted him on August 31, 2001, for aggravated child molestation and other crimes. Porter was released on bond. More than four years later, on November 15, 2005, an arrest warrant was issued for Porter based on new allegations of child molestation against another of his children that occurred while he was on bond. On February 23, 2005, after Porter failed to appear in court regarding the 2001 indictment, the trial court issued a bench warrant. Porter remained a fugitive until his arrest in April 2006. In May 2006, he was indicted on the new charges of child molestation. In July and November 2007, Porter, while represented by counsel, filed pro se demands for trial on the 2001 indictment.

The trial court scheduled both indictments for trial on December 9, 2008, and again on December 16, but the trial dates were continued at defense counsel's request. On January 15, 2009, Porter filed motions to dismiss both indictments for violation of his constitutional right to a speedy trial under the United States and Georgia Constitutions. On January 21, 2009, the trial court held a single hearing on the two motions. On January 27, 2009, the trial court denied the motion to dismiss the 2006 indictment; Porter did not appeal that order. Two weeks later, the court granted the motion to dismiss the 2001 indictment; the State appealed that order. The Court of Appeals affirmed, and we granted certiorari to review that decision.

2. (a) *The Constitutional Framework*

The basic framework for deciding speedy trial claims under the federal and state constitutions is well settled. See *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). See also *Doggett v. United States*, 505 U. S. 647, 651 (112 SC 2686, 120 LE2d 520) (1992); *Ruffin v. State*, 284 Ga. 52, 55 (663 SE2d 189) (2008). The first inquiry is "whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered 'presumptively prejudicial.' If not, the speedy trial claim fails at the threshold." *Ruffin*, 284 Ga. at 55.

If this threshold is passed, the trial court must balance four factors: "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the

delay's result." *Doggett*, 505 U. S. at 651. The four factors

> "have no talismanic qualities" and "must be considered together with such other circumstances as may be relevant" given the animating principles behind the speedy trial guarantee. Thus, the second stage of the constitutional speedy trial analysis requires courts to "engage in a difficult and sensitive balancing process" and "necessarily compels them to approach speedy trial cases on an ad hoc basis."

*Ruffin*, 284 Ga. at 56 (citations omitted).

The trial court's weighing of each factor and its balancing of all four factors — its ultimate judgment — are reviewed on appeal only for abuse of discretion. See *State v. Lattimore*, 287 Ga. 505, 506 (696 SE2d 613) (2010); *Williams v. State*, 277 Ga. 598, 601 (592 SE2d 848) (2004). However, "where . . . the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." *Williams*, 277 Ga. at 601. In addition, the trial court's order must provide sufficient findings of fact and conclusions of law to permit this Court to determine if the trial court properly exercised its discretion under the *Barker* analysis. See *Higgenbottom v. State*, 288 Ga. 429, 430 (704 SE2d 786) (2011).

We see several errors in the application of this framework to Porter's speedy trial claim by the trial court and the Court of Appeals, some of which are significant enough to necessitate remand of the case.

(b) *The Threshold Inquiry*

Both the trial court and the Court of Appeals concluded that the pre-trial delay in this case was sufficient to trigger analysis of the *Barker* factors. That conclusion is correct.

However, we note that the Court of Appeals erred in calculating the delay in this case as the time "elapsed from the November 12, 2000 date of Porter's arrest [to] his initial trial date, December 9, 2008" and in stating that "generally a delay of eight months or longer is presumptively prejudicial," citing *Giddens v. State*, 280 Ga. App. 586, 587 (634 SE2d 526) (2006). *Porter*, 300 Ga. App. at 129. Where a trial has not occurred, the delay should be calculated from the date of arrest or other formal accusation to the date on which a defendant's speedy trial motion was granted or denied (here, February 11, 2009), rather than any initial date set for the trial. See *Ruffin*, 284 Ga. at 55, n. 15. Otherwise, delays due to continuances of an original trial date would be excluded regardless of their length or cause. Moreover, the case law from this Court and the United States Supreme Court states that one year, not eight months, generally

marks the point at which delay becomes presumptively prejudicial. See id. at 55; *Doggett*, 505 U. S. at 652, n. 1.

(c) *The Barker Factors*

(1) *Length of Delay*

The Court of Appeals correctly noted that "[t]he State does not challenge the trial court's finding that the pretrial delay at issue should weigh against the State as uncommonly long." *Porter*, 300 Ga. App. at 130.

(2) *Reasons for the Delay*

The trial court found that "some delay is attributable to the State," based on the State's dismissal of the original December 29, 2000, indictment and its later filing of a "succeeding indictment on August 31, 2001." Other than this eight-month period, however, the trial court's order does not discuss how the remaining delay of almost eight years should be attributed to or weighed against the State or Porter.

After a more detailed analysis of the reasons for the delay, the Court of Appeals determined that "approximately six years and eleven months of the delay [was] attributable to the government," but that, due to defense counsel's requests for continuances and Porter's voluntary absence from court while he was a fugitive, about two years of the delay was attributable to Porter. *Porter*, 300 Ga. App. at 130-131. However, the Court of Appeals concluded that the trial court "did not err in weighing the reason for the delay . . . against the government," id. at 131, even though the trial court had stated only that about eight months of the delay was attributable to the government and never decided whether the bulk of the long delay at issue in this case weighs against the State or Porter. The Court of Appeals' calculations appear accurate, and it appears that the governmental delay was not deliberate but instead was the result of negligence and workloads, which are weighed only lightly, or benignly, against the State. See *Sweatman v. State*, 287 Ga. 872, 875 (700 SE2d 579) (2010). However, the Court of Appeals should not have made those findings and weighed the results in the first instance. See *Higgenbottom*, 288 Ga. at 430-431.

In this respect, the State argues that Porter's failure to appear for court in February 2005 and his subsequent fugitive status until April 2006 constitutes a waiver of his speedy trial right. We disagree. Although one of the cases on which the State relies holds that the accused waived his speedy trial right by fleeing the jurisdiction, the defendant there was a fugitive for the entire period of pre-trial delay. See *People v. Perez*, 229 Cal. App. 3d 302, 308-313 (Cal. App. 2d Dist. 1991). Without deciding whether we would follow *Perez* under similar circumstances, we do not believe that a defendant who becomes a fugitive forever forfeits his speedy trial right. Otherwise,

the State could detain a re-captured fugitive without trial indefinitely.

On the other hand, the year that Porter spent as a fugitive cannot be counted against the State, and indeed normally would be weighed heavily against Porter, because it usually reflects a defendant's deliberate intent to delay trial. See *Doggett*, 505 U. S. at 656-657 (holding that deliberate delay by the government weighs heavily against it); *Ruffin*, 284 Ga. at 59 (same). The trial court's order does not even mention Porter's fugitive status. The Court of Appeals properly stated that his fugitive time did not count against the State, but it did not address whether that delay should be weighed heavily against Porter or whether the facts regarding his fugitive status might allow the trial court to attribute less weight to the issue.

(3) *Assertion of the Right to Speedy Trial*

Relying on *State v. Lively*, 155 Ga. App. 402 (270 SE2d 812) (1980), the State contends that Porter never properly asserted his right to a speedy trial, because a motion to dismiss an indictment for violation of speedy trial rights, absent a demand for trial, should not be considered an assertion of the right in the *Barker* analysis. *Lively* held that "[t]he motion to dismiss or quash the indictment for denial of speedy trial, which did not request an immediate trial, is not a demand for trial and is not an assertion of the right to speedy trial." Id. at 406 (citations to *Barker* and emphasis omitted).

It is true that the "timing, form, and vigor of the accused's demands to be tried immediately" should be considered in determining the *weight* given to the assertion-of-the-right factor. See *Ruffin*, 284 Ga. at 63. This Court, however, has repeatedly and consistently recognized that a defendant may assert his constitutional speedy trial right through a motion to dismiss asserting a violation of that right. See, e.g., *Robinson v. State*, 287 Ga. 265, 266, 268-269 (695 SE2d 201) (2010); *Weis v. State*, 287 Ga. 46, 48, 54 (694 SE2d 350) (2010); *Bowling v. State*, 285 Ga. 43, 43, 45-46 (673 SE2d 194) (2009). See also *Doggett*, 505 U. S. at 650, 653 (treating Doggett's motion to dismiss the indictment for violation of his speedy trial right, without mention of any demand for trial, as an assertion of the right); *Barker*, 407 U. S. at 528 (rejecting the view that a defendant waives his right to a speedy trial entirely by failing to file a formal demand for trial or for the period before such a demand if one is eventually filed). To the extent that *Lively* is inconsistent with our cases, it is disapproved.

Thus, Porter's January 2009 motion to dismiss was sufficient to assert his right to a speedy trial. However, he waited to assert that right for more than eight years after his arrest and almost eight years from his August 2001 re-indictment. Indeed, he did not assert

his constitutional right until after two trial dates had been set and continued at his counsel's request. Our cases hold that an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant. See, e.g., *Brown v. State*, 287 Ga. 892, 895-896 (700 SE2d 407) (2010) (holding that this factor weighed heavily against co-defendants who waited two and three years, respectively, to assert their right to a speedy trial); *Layman v. State*, 284 Ga. 83, 86 (663 SE2d 169) (2008) (holding that a four-year delay weighed heavily against the defendant). See also *Doggett*, 505 U. S. at 653 (stating that if Doggett had known of his indictment and waited eight years to assert his right to a speedy trial, the factor "would be weighed heavily against him").

Here, however, the trial court's order completely omitted this factor from its analysis.[1] Moreover, the Court of Appeals first erroneously stated that the trial court properly weighed this factor against Porter, see 300 Ga. App. at 132, and then erred further by failing to give weight to this factor in determining whether the trial court abused its discretion in granting Porter's motion to dismiss. See id. at 132-133.

(4) *Prejudice*

The final factor in the *Barker* analysis is prejudice to the defendant. The types of prejudice associated with an unreasonable delay before trial include " 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U. S. at 654 (quoting *Barker*, 407 U. S. at 532). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " Id.

There was no claim of oppressive pre-trial incarceration in this case. However, the trial court's order found that a pro se letter demanding trial that Porter filed in July 2007, while not legally effective to assert his speedy trial right, was evidence that the delay had caused Porter anxiety and concern.[2] This finding is not sup-

---

[1] The trial court's unappealed order denying Porter's motion to dismiss his 2006 indictment, which is in the record, was based on the same hearing and evidence as the order dismissing the 2001 indictment. In the unappealed order, the trial court weighed against Porter his non-assertion of his speedy trial right for only two years, whereas in the order we are reviewing, the court failed to mention Porter's eight-year delay in asserting his right to a speedy trial on the 2000 charges. This contradiction makes no sense, except in considering that the two orders were drafted by counsel for the party that prevailed on each motion to dismiss – the State and Porter, respectively – and then signed, apparently unchanged, by the trial court. See also footnote 3 below.

[2] This demand was filed while Porter was represented by counsel. For this reason, the trial court and the Court of Appeals correctly ruled that the demand had no legal effect. See *Porter*, 300 Ga. App. at 131-132; *Williams v. Moody*, 287 Ga. 665, 669 (697 SE2d 199) (2010)

ported by the record. Porter never offered the letter into evidence at the hearing on the motions to dismiss, and even if he had, the letter would have been hearsay without probative value. See *Waldrip v. Head*, 279 Ga. 826, 828 (620 SE2d 829) (2005). And Porter did not testify regarding his alleged anxiety or offer any other admissible evidence on that issue.

The trial court's order also found that Porter presented "testimony" that one of his witnesses, "a close family member," had died during the pre-trial delay, stated that the evidence this witness would have presented "would not be cumulative" of other available witnesses, and concluded that Porter therefore had shown "significant and substantial impairment to his defense." However, the record shows that Porter did not testify at the hearing, but merely informed the trial court orally, apparently from his seat at counsel table, that two of his witnesses had died, one of the four on his witness list and another person not on his list. Thus, no actual evidence or appropriate proffer in the record establishes the death of any of Porter's witnesses.

Moreover, even accepting that the witness discussed in the trial court's order is deceased, Porter offered no evidence or proffer whatsoever as to what the witness would have testified about, why that testimony would have been favorable to Porter, or why the testimony would not have been cumulative of the three other witnesses on Porter's witness list who, like the witness discussed in the order, were living in his house at the time of the alleged crimes and whose testimony also was not outlined. Accordingly, there was no basis for the trial court to conclude that the witness's absence was actually prejudicial to Porter's defense. See *Christian v. State*, 281 Ga. 474, 478 (640 SE2d 21) (2007) (holding that the defendant failed to show prejudice where she did not show that a missing witness would have provided testimony favorable and relevant to her defense).[3]

---

(holding that a pro se motion filed by a defendant while represented by counsel is " 'unauthorized and without effect.' " (citation omitted)).

[3] We note our serious concern that the trial court's unappealed order on the 2006 indictment, see footnote 1, above, squarely contradicts the court's order on the 2001 indictment with regard to prejudice from alleged missing witnesses. The hearing record shows that the defense contended that the witnesses who were allegedly missing with regard to the 2001 indictment were the same witnesses who were allegedly missing with regard to the 2006 indictment, as the same witnesses lived with Porter in the same apartment at the time of the crimes charged in both indictments. In the order denying dismissal of the 2006 indictment, the trial court stated that Porter alleged that two, not one, of his witnesses had died, and found that Porter "presented no evidence of their deaths" and "failed to present 'specific evidence' of how the loss of those witnesses impaired his ability to defend his case." In fact, the court specifically ruled that "any testimony from the two allegedly deceased witnesses would be merely *cumulative* of testimony from the two live witnesses since all four resided in the

In its consideration of the prejudice factor, the Court of Appeals did not mention the trial court's unsupported finding of Porter's anxiety and concern, focusing exclusively on prejudice to the defense. Perhaps recognizing the lack of evidentiary support for the trial court's finding of demonstrable impairment of Porter's defense, the Court of Appeals pretermitted whether the trial court had correctly found such prejudice and instead ruled that the substantial delay in the case gave rise to a presumption of prejudice to the defense. See *Porter*, 300 Ga. App. at 132. That much is correct; the greater the delay between charging and trial, the greater the presumed impairment of witness recollections and other evidence needed for a fair and reliable trial. See *Doggett*, 505 U. S. at 652, 655, 657; *Ruffin*, 284 Ga. at 57.

However, the Court of Appeals incorrectly suggested that a presumption of prejudice arises only after a certain extended period elapses. See *Porter*, 300 Ga. App. at 132 (citing cases for the proposition that pretrial delays of five years or longer give rise to a presumption of prejudice). In fact, once the threshold of presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time. See *Doggett*, 505 U. S. at 652, 655, 657; *Ruffin*, 284 Ga. at 57. Similarly, the Court of Appeals incorrectly cited *Harris v. State*, 284 Ga. 455 (667 SE2d 361) (2008), for the proposition that there is "no presumption of actual prejudice despite pretrial delay of 65 months where defendant waited to the 60th month to assert the right." *Porter*, 300 Ga. App. at 133. In *Harris*, we held that the lengthy delay did establish a presumption of prejudice, but that Harris could not prevail on his speedy trial claim because, balancing all four *Barker* factors, the presumptive prejudice was outweighed by other considerations, particularly Harris's lengthy delay in asserting his right to a speedy trial and the absence of demonstrable prejudice to his defense. See *Harris*, 284 Ga. at 455-457.

(d) *Balancing the Four Factors*

As indicated above, the trial court's order did not correctly conduct the balancing test required by *Barker* and our precedents. The court did not mention the assertion-of-the-right factor at all. Moreover, while it attributed some delay (eight months) to the State, it did not address the remaining eight years of pre-trial delay, including the period in which Porter appears to have deliberately precluded trial as a fugitive, and it did not appear to weigh this factor

---

residence with the defendant when he exercised visitation with his daughters at the time of the offense." (Emphasis in trial court's order.) These findings are directly at odds with those in the ordering granting the motion to dismiss the 2001 indictment that we consider in this appeal.

along with the others in reaching its conclusion that Porter's speedy trial rights had been violated.

The Court of Appeals also failed to evaluate Porter's delay in asserting his right to a speedy trial in the final balancing. See *Porter*, 300 Ga. App. at 132-133. Instead, it stated that, because most of the long pre-trial delay was attributable to the State (in its view), the presumption of prejudice that arose from the delay "compels relief for the defendant unless the State can rebut that presumption." Id. at 132. The court then concluded that, because the "[a]ctual prejudice to Porter . . . stands unrebutted" and was largely due to the State's negligent delay, the trial court did not abuse its discretion in dismissing the 2001 indictment. Id. at 133.

The Court of Appeals erred in stating that there was "actual," as opposed to presumptive, prejudice to Porter's defense. As discussed above, the record does not support the trial court's finding of demonstrable prejudice. Moreover, the Court of Appeals' focus on the presumption of prejudice to the exclusion of another *Barker* factor, Porter's delay in asserting his right, strays from the flexible balancing test that is the ultimate focus of the *Barker* analysis.

The Court of Appeals did mention the assertion factor in stating that "[t]he State can rebut the foregoing presumption [of prejudice to the defense] by showing that the defendant acquiesced in the delay by failing to timely assert his right to a speedy trial or otherwise benefitted from the delay." *Porter*, 300 Ga. App. at 132. This confuses the *Barker* factors. The weight given to the prejudice factor may be bolstered if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time. Likewise, the weight given to presumed prejudice may be reduced or even eliminated if the State can show that the defense has not, in fact, been substantially impaired. But the defendant's failure to assert his speedy trial right does nothing to diminish whatever prejudice to his defense is presumed from delay or demonstrated in particular. Moreover, saying that a failure to timely assert the right to a speedy trial is needed to "rebut" the presumption of prejudice gives priority to the prejudice factor and disregards the need to balance all four *Barker* factors in each case. If all four factors point in one direction, the result of weighing them together will be clear, but otherwise, under the circumstances of a particular case, any one factor may be weighty enough to tip the balance.

As the United States Supreme Court explained in *Barker*:

We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances

as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

407 U. S. at 533. The *Barker* Court emphasized that its "balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis." Id. at 530. Our Court has often repeated this admonition to consider and weigh all four factors under the circumstances of each case, including in *Harris*, 284 Ga. at 455-456, one of the cases the Court of Appeals cited for its mistaken formulation. See, e.g., *Rogers v. State*, 286 Ga. 387, 387-388 (688 SE2d 344) (2010); *Ruffin*, 284 Ga. at 56; *Williams v. State*, 282 Ga. 561, 563 (651 SE2d 674) (2007).

While this ad hoc approach may produce some apparent inconsistency of results, which may frustrate some courts and litigants, it is what our nation's High Court has directed for analysis of Sixth Amendment speedy trial claims. In this case, the Court of Appeals acknowledged this delicate balancing test at the outset of its analysis, see *Porter*, 300 Ga. App. at 129, but then failed to properly apply it.[4]

(e) *Exercise of Discretion*

In any event, the Court of Appeals erred in not reversing the trial court's judgment and remanding the case with direction. A trial court exercises substantial discretion in applying the *Barker* balancing test, and its ultimate judgment is reviewed on appeal only for abuse of that discretion. See *Williams*, 277 Ga. at 601. However, "where . . . the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." Id. Moreover, as the Court of Appeals has previously held and we recently confirmed, "[i]t is imperative . . . that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*. Absent such findings, there is no exercise of discretion for this Court to review," and the trial court's order must be "vacated and the case remanded for the entry of a proper order pursuant to *Barker*." *Higgenbottom*, 288 Ga. at 430-431 (citing *Bryant v. State*, 265 Ga. App. 234, 235 (593 SE2d 705) (2004)).

As explained above, the trial court here clearly erred in its key

---

[4] Citing *United States v. Ingram*, 446 F3d 1332 (11th Cir. 2006), the State argues that unless all three other factors weigh heavily against the State, the defendant must show actual prejudice to prevail on a speedy trial claim. See id. at 1337-1338. We also see this formulation as inconsistent with the flexible balancing test required by *Barker* and this Court's precedents, and we decline to adopt it.

factual findings regarding Porter's anxiety and concern and actual impairment to his defense. The trial court's order also reveals significant legal errors. It omitted any mention of the assertion-of-the-right *Barker* factor and attributed only eight months of delay to the State, without addressing the reasons for the nearly eight additional years of delay, including a year of delay caused, apparently deliberately, when Porter became a fugitive. As a result, the trial court could not properly balance the *Barker* factors, and the Court of Appeals could not properly affirm the trial court's judgment. Instead, the Court of Appeals should have vacated the order and remanded the case for the trial court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order. See *Williams*, 277 Ga. at 601; *Higgenbottom*, 288 Ga. at 430-431. See also *Moore v. Arizona*, 414 U. S. 25, 26 (94 SC 188, 38 LE2d 183) (1973) (remanding case to state court that erred in applying the *Barker* balancing test by ruling that lack of prejudice to the defendant was determinative of his claim and failing to consider all four factors).

For these reasons, we reverse the Court of Appeals' judgment and remand the case for proceedings consistent with this opinion. We urge the Court of Appeals and the trial court to act as promptly as practicable on this matter, so that Porter may be discharged (if that is the appropriate outcome) or tried (if that is the appropriate outcome) on the very serious charges that have now been pending against him for more than a decade.

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED FEBRUARY 7, 2011.

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Bettieanne C. Hart, Marc A. Mallon, Paige R. Whitaker, Assistant District Attorneys, Jones Day, Richard H. Deane, Jr.,* for appellant.

*Jimmonique R. S. Rodgers,* for appellee.

*Charles C. Olson,* amicus curiae.